IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERIC C. PENDLETON,<br><br>Plaintiff,<br><br>v.<br><br>RANDY KENNEDY, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:24-cv-00252<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Eric C. Pendleton, a resident of Nashville, Tennessee, has filed an amended complaint (Doc. No. 22-1, "Amended Complaint")[1] in this pro se, in forma pauperis action, asserting claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 as well as state law, against Defendants Randy Kennedy ("Defendant Judge Kennedy"), Elizabeth A. Johnson ("Defendant Johnson"), Bob Bradshaw ("Defendant Bradshaw"), Andra Hedrick ("Defendant Judge Hedrick"), Corletra Mance ("Defendant Mance"), Metropolitan Government of Nashville and Davidson County ("Defendant Metro"), Marquica Beasley ("Defendant Beasley"), Tara Shuemake ("Defendant Shuemake"), Alexander Jones ("Defendant Jones"), Trevecca Center for Rehabilitation and Healing ("Defendant Trevecca"), John Doe ("Defendant John Doe"), and Jane Doe ("Defendant Jane Doe"). (*Id.* at 2, 4-5).

[1] The Amended Complaint superseded the original complaint in this action (Doc. No. 1) and is the operative complaint.

# I. INITIAL REVIEW

A. LEGAL STANDARD

When a plaintiff is proceeding in forma pauperis, the Court must conduct an initial review and dismiss the complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). In making the plausibility determination, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, 87 F.4th at 749.

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d

591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

B. ALLEGED FACTS

The facts indicated below, which are alleged in the Amended Complaint (Doc. No. 22-1), are presumed true for purposes of the required screening of the Amended Complaint.[2]

Plaintiff cared for his mother, Cora L. Pendleton ("Mrs. Pendleton"), for five years. (*Id.* at 2). Family members intervened, and Plaintiff filed a Petition for Conservatorship on February 7, 2020. (*Id.*). The hearing in that case was rescheduled to June 10, 2020 due to COVID-19. (*Id.*).

Defendant Mance was appointed as Guardian ad Litem by Defendant Judge Kennedy, the presiding probate judge. (*Id.*). However, according to Plaintiff, Defendant Mance had a conflict of interest because her "law firm previously represented Plaintiff in a domestic case in which Plaintiff was later found not guilty." (*Id.*). Additionally, "a concerned citizen" contacted Plaintiff to let him know that they had personal knowledge of Defendant Mance's pattern of bias. (*Id.*).

At the hearing held on June 10, 2020, Plaintiff was the only party present in the courtroom. (*Id.*). Plaintiff's niece, Defendant Beasley, and her attorney participated in the hearing by phone and were not sworn in. (*Id.* at 3). During the hearing, Defendant Judge Kennedy asked where Mrs. Pendleton was, in response to which "Defendants stated she was 'asleep.'" (*Id.*). Plaintiff told Defendant Judge Kennedy that the hearing could not continue due to his mother's absence and

[2] By contrast, Plaintiff's asserted legal conclusions or wholly conclusory assertions (which are identified by the Court via language such as "plaintiff asserts") are not entitled to, and thus are not afforded, the presumption of truth herein.

corresponding inability to testify, to which Defendant Judge Kennedy responded by saying, "I am not going to consider anything you have to say." (*Id.*). Plaintiff contends Mrs. Pendleton was denied the right to be present, to testify, and to express her wishes at the hearing. (*Id.*). Plaintiff also alleges that he was denied the right to present any evidence or challenge false statements. (*Id.*).

Defendant Judge Kennedy stated[3] that Defendant Beasley "could 'sell the house to whoever she wants to,'" and he failed to require that any "statutory conservatorship procedures" be followed. (*Id.*). Plaintiff asserts that this violated Tennessee conservatorship laws. (*Id.*).

Mrs. Pendleton had a life insurance policy that she designated for Plaintiff, but Defendant Judge Kennedy allowed Defendant Beasley to cash it in. (*Id.*). Plaintiff contends that he was the named beneficiary, but Defendant Judge Kennedy disregarded this contention. (*Id.*). Plaintiff argues that Defendants' conduct constituted exploitation, conversion, and misuse of judicial authority. (*Id.*). Plaintiff had personal property stored at Mrs. Pendleton's residence, but it was "interfered with due to the unauthorized sale and removal of property." (*Id.*).

Defendant Judge Hedrick presided over the conservatorship after Defendant Judge Kennedy's retirement. (*Id.*). Defendant Judge Hedrick asked Defendant Beasley if she cashed in the life insurance policies, to which Defendant Beasley responded that she had. (*Id.*). Defendant Judge Hedrick ordered Defendant Beasley to "return two of the policy proceeds and instructed her to meet the Judge at the bank to do so." (*Id.*). There were three life insurance policies, not two, so the amount that Defendant Judge Hedrick required Defendant Beasley to return did not cover the

[3] The Amended Complaint does not explicitly allege that this statement was made during a hearing and, if so, on what date. A fair inference can be drawn that the statement was (allegedly) made during the June 10, 2020 hearing.

full value of all three of the life insurance policies that she cashed in, and Plaintiff did not receive the life insurance proceeds to which he was legally entitled. (*Id.*).

Mrs. Pendleton called Plaintiff a few weeks after the hearing and begged him to come get her. (*Id.*). Plaintiff informed her of the court proceedings, to which Mrs. Pendleton said, "I didn't know." (*Id.*). Plaintiff asserts that this shows Mrs. Pendleton "was not informed, not present, and did not consent to the conservatorship." (*Id.*).

Defendant Beasley placed Mrs. Pendleton in a nursing home against her wishes, and she ignored Plaintiff's objections and requests against the same. (*Id.* at 4). Defendant Shuemake, the Director of Rehabilitation at Trevecca Center for Rehabilitation and Healing, "acted upon the Court's orders but failed to notify Plaintiff or provide required information," and Defendant Jones, the Director of Concierge Service at Trevecca Center, "concealed records and refused to provide information regarding Mrs. Pendleton's placement and condition." (*Id.*). Plaintiff's requests for records under the Tennessee Public Records Act and the Freedom of Information Act were ultimately ignored. (*Id.*).

Plaintiff asserts that the Davidson County Probate Court, specifically under Defendant Judge Kennedy, "had a long standing pattern of disproportionately denying due process protections to Black litigants and low income families," and that Plaintiff experienced this himself. (*Id.*). Plaintiff further alleges that Defendant Metro "failed to train or supervise its probate officials, resulting in systematic violations." (*Id.*).

Plaintiff alleges Defendants Judge Kennedy, Mance, Beasley, "and others" engaged in conduct that corrupted the judicial process. (*Id.*).

C. <u>ANALYSIS</u>

*i. Defendants Elizabeth A. Johnson, Bob Bradshaw, Tara Shuemake, Trevecca, John Doe, and Jane Doe*

The Amended Complaint fails to state a claim upon which relief may be granted as to Defendants Johnson, Bradshaw, Shuemake, Trevecca, John Doe, and Jane Doe. (Doc. No. 22-1 at 2-5).

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim." Additionally, Rule 8(a)(3) requires that a pleading contain "a demand for the relief sought, which may include relief in the alternative or different types of relief."

Plaintiff does not mention Defendants Johnson and Bradshaw within the Amended Complaint beyond naming them as parties to the instant case, and Plaintiff fails to connect any allegations to these Defendants. (*See* Doc. No. 22-1). Similarly, Plaintiff names Defendants John Doe and Jane Doe as parties and states that they are "unknown individuals who participated in the violations described." (*Id.* at 2). Plaintiff names Defendant Trevecca and states that Defendant is "responsible for the care of Mrs. Pendleton." (*Id.*). Plaintiff neither describes how these Defendants were involved in any of the alleged events nor identifies any violations in which they took part. (*See* Doc. No. 22-1).

Next, Plaintiff alleges that Defendant Shuemake "acted upon the Court's orders but failed to notify Plaintiff or provide required information." (*Id.* at 2, 4). However, the Amended Complaint fails to provide any context, such as what court orders Defendant Shuemake acted upon, whether she had a legal duty to notify Plaintiff or provide any information to Plaintiff, or what information was required that she share with Plaintiff.

Plaintiff's sparse allegations as to these Defendants fail to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," as required for any claim(s) against these Defendants to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill*, 630 F.3d at 470–71 (quoting *Iqbal*, 556 U.S. at 678). The Court will not create a claim that Plaintiff failed to spell out himself in the Amended Complaint. *Brown*, 415 F. App'x at 613. Even under the liberal construction afforded to pro se complaints, a complaint is subject to dismissal as to defendants who are named as defendants without an allegation of conduct by those defendants in particular. *See Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Because Plaintiff fails to set forth factual allegations against Defendants Johnson, Bradshaw, Shuemake, Trevecca, John Doe, and Jane Doe sufficient to suggest a right to relief that is "plausible on its face," *Small*, 963 F.3d at 540 (quoting *Iqbal*, 556 U.S. at 678), the Court will dismiss them as Defendants in this case.

*ii. Section 1983 Claims Against Defendants Judge Randy Kennedy, Judge Andra Hedrick, and Corletra Mance*

a. 42 U.S.C. § 1983, Generally

42 U.S.C. § 1983[4] provides a cause of action (called a "Section 1983 claim") against all people who, under color of state law, deprive any person of any right secured by the United States Constitution or federal law. To state a colorable Section 1983 claim, a plaintiff must allege: (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). If either element is absent, the Section 1983 claim has not been properly pleaded. *Kissinger v. Mahoning Cnty. Republican Party*, 677 F. Supp. 3d 716, 724 (N.D. Ohio June 16, 2023) (citing *Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio July 15, 2010)).

b. Defendants Judge Kennedy and Judge Hedrick

Plaintiff sues Defendants Judge Kennedy and Judge Hedrick in both their official and individual capacities. (Doc. No. 22-1 at 2). As best the Court can discern, Plaintiff alleges that Defendants Judge Kennedy and Judge Hedrick, both Davidson County probate judges, violated

---

[4] That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983.

his due process and equal protection rights. (*Id.* at 4-5). Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.* at 5).

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity[5]." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Where it is applicable, "[sovereign] immunity applies to suits against state agencies and officers in their official capacities." *Ingram v. Tenn. Dep't of Labor and Workforce Dev.*, No. 3:12-cv-01106, 2013 WL 1965130, at *2 (M.D. Tenn. May 10, 2013) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008)). Subject to the below-discussed exceptions, sovereign immunity bars lawsuits "for injunctive,

---

[5] The concept of sovereign immunity predates the Eleventh Amendment. *See Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 329–30 (6th Cir. 2022) ("When the States entered the federal system, they did so with their sovereignty intact." *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 499 (2021) (quotation omitted)). One feature of sovereignty is immunity from suit. *Id.* Whether reflected in the words of the Tenth or Eleventh Amendments or background principles to the Convention, sovereign immunity protects States and the Federal Government from litigation except in "limited circumstances." *Id.; see also Morgan*, 63 F.4th at 518 ("Eleventh Amendment sovereign immunity generally shields states from individuals suing them in federal court unless states waive their immunity or Congress removes it by statute.").

But as a practical matter, since the Eleventh Amendment's passage, the Sixth Circuit usually seems to analyze "sovereign immunity" and "Eleventh Amendment immunity" the same way, treating the latter as a version of the former. A reported Sixth Circuit opinion from a few of years ago is an outlier, taking a very different approach by treating sovereign immunity and Eleventh Amendment immunity as entirely distinguishable, in various ways, including that the former but not the latter is waivable and that the former defeats personal jurisdiction while the latter defeats subject-matter jurisdiction. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. 2021). But since then, the Sixth Circuit has (again) indicated (re)approval of its pre-*WCI* approach. For example, in *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th at 515, 518 (6th Cir. 2023), the court in *Morgan* used the phrase "Eleventh Amendment sovereign immunity," 63 F.4th at 515, 518, which suggests that sovereign immunity and Eleventh Amendment immunity should be treated as the same thing. *See also Yoder v. Bowen*, 146 F.4th 516, 527 n.3 (6th Cir. 2025) (calling an argument "that the Eleventh Amendment bars Plaintiffs' suit" a "sovereign immunity argument"). And recently, the Sixth Circuit has made a statement that quite clearly suggests that the kind of immunity that the Eleventh Circuit provides *is* sovereign immunity. *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) ("Under the Eleventh Amendment, states generally have sovereign immunity from suit in federal court.").

Confronted with the unenviable task of choosing between a relatively recent, persuasive and ostensibly precedential case (*WCI)* and an entirely conflicting line of precedential cases, the undersigned at this juncture feels constrained to follow the more voluminous and recent precedent and treat the two kinds of immunity as generally analytically indistinct from one another.

declaratory or monetary relief." *Morgan v. Bd. of Pro. Responsibility of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (quoting *Thiokol Corp. v. Dep't of Treas., State of Mich. Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)).

A few exceptions to sovereign immunity exist: (1) "Congress can abrogate a state's sovereign immunity by passing appropriate legislation pursuant to Section 5 of the Fourteenth Amendment"; and (2) "[A] state may waive its immunity from suit." *Vick v. Core Civic*, No. 1:18-cv-00003, 2020 WL 1670742, at *2 (M.D. Tenn. Mar. 6, 2020) (citing *Hoffman v. Conn. Dep't of Income Maint.*, 492 U.S. 96, 101 (1989), and *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). As for the second exception, Tennessee has not waived its sovereign immunity.[6] Tenn. Code Ann. § 20-13-102(a). The Court will find a waiver only where stated "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

Under another exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008). "This [*Ex Parte*

---

[6] The concept of sovereign immunity is preserved within the Tennessee Constitution, which states, "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. In so stating, the Tennessee Constitution makes clear that sovereign immunity is preserved under Tennessee law except to the extent that claims for damages against the state or its authorized agents are allowed by state statute. And an applicable state statute makes clear that such claims are not authorized, which is to say that sovereign immunity is preserved in Tennessee by a combination of the Tennessee Constitution and state statute:

> The Tennessee Code explicitly prohibits "any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property." Tenn.[sic]Code Ann. § 20-13-102(a) (2013). Absent legislation providing otherwise, Tennessee courts have interpreted this statutory provision to hold that the state remains immune from . . . claims for . . . monetary damages . . . .

*Ingram*, 2013 WL 1965130, at *2.

*Young*] doctrine applies only when the plaintiff sues for 'prospective [injunctive] relief to end a continuing violation of federal law.'" *Morgan*, 63 F.4th at 515 (quoting *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)). If it is unclear what the relevant ongoing violations are, the exception does not apply. *Id.* (citing *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017)). The exception is also inapplicable to requests for injunctive relief "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to" the plaintiff. *Id.* (citing *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)); *see also S & M Brands*, 527 F.3d at 508.

I. Official Capacity

To the extent that Plaintiff sues Defendants Judge Kennedy and Judge Hedrick in their official capacities for claims seeking injunctive, declaratory or monetary relief, the Eleventh Amendment controls. *Ingram*, 2013 WL 1965130, at *2. Because these Defendants' occupation is judicial in nature, these Defendants stand in the stead "of the entity they represent," that being the courts. *S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 420 (6th Cir. 2004) (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.")). Because "all parts of the State court system" are treated as "an arm of the State," *Gaines v. Cross*, 771 F. Supp. 3d 982, 991 (S.D. Ohio Mar. 18, 2025), the immunity provided by the Eleventh Amendment applies to Defendants Judge Kennedy and Judge Hedrick as arms of the State. And "a State is not a 'person' against whom a Section 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Therefore, Defendants Judge Kennedy and Judge Hedrick are immune from Plaintiff's Section 1983 claims that request monetary damages.

Additionally, the *Ex Parte Young* exception does not offer Plaintiff relief from the application of sovereign immunity. Plaintiff alleges not any ongoing violations but instead only events that have occurred previously. (*See* Doc. No. 22-1). It appears that Plaintiff is requesting relief "based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to" Plaintiff. *Morgan*, 63 F.4th at 515 (citing *Gean*, 330 F.3d at 776). Therefore, the *Ex Parte Young* exception does not apply to any of the relief requested by Plaintiff, including any requests for injunctive and declaratory relief as to Defendants Judge Kennedy and Judge Hedrick. *Id.*

For all of these reasons, Plaintiff's Section 1983 claims against Defendant Judge Kennedy and Defendant Judge Hedrick in their official capacities fail in all respects based on Eleventh Amendment (and sovereign) immunity, and the Court will dismiss those claims. This dismissal is without prejudice. *Pichiorri v. Burghes*, 162 F.4th 745, 752 (6th Cir. 2025) ("[C]ourts have treated sovereign immunity as a limit on their jurisdiction over lawsuits against the States . . . For our part, we held that sovereign immunity qualifies as a 'jurisdictional bar' and not an 'affirmative defense'[.]"); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice." (citing *Ernst v. Rising,* 427 F.3d 351, 367 (6th Cir. 2005)); *Mich. Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice." (quoting *Mitan v. Int'l Fid. Ins. Co.,* 23 F. App'x 292, 298 (6th Cir. 2001))).

II. Individual Capacity

Judicial officers generally are absolutely immune from civil suits for monetary damages under 42 U.S.C. § 1983 for their judicial actions, *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir.

2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)), the idea being that when judicial officers act in their official capacities, they "should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Id.* at 944-45 (citing *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978)). "Absolute judicial immunity is an immunity from suit, not merely the assessment of damages, and is not overcome by allegations of bad faith or malice on the part of the defendant." *Annette v. Haslam*, No. 3:18-1299, 2020 WL 434162, at *8 (M.D. Tenn. Jan. 27, 2020) (citing *Forrester v. White*, 484 U.S. 219, 227 (1988)). Judicial immunity also extends beyond suits seeking damages against defendants, to encompass Section 1983 lawsuits within which injunctive relief is requested against defendants. *Coleman v. Governor of Mich.*, No. 09-1139, 2011 WL 894430, at *5 (6th Cir. 2011) ("[B]y enacting the 1996 Federal Courts Improvement Act … Congress … expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer.").

There are two exceptions to absolute judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. . . Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citations omitted). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. A judge "acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court," *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997), and the scope of such jurisdiction must be construed broadly when determining judicial immunity, *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985).

Here, the two *Mireles* exceptions—when the actions taken were nonjudicial and when the actions taken were in the complete absence of all jurisdiction—fail to afford Plaintiff an avenue to pursue the relief he seeks. 502 U.S. at 11-12. As explained above, Plaintiff's factual allegations concern actions taken by Defendants Judge Kennedy and Judge Hedrick in their judicial capacities while they were performing "functions normally performed by a judge." *Stump*, 435 U.S. at 362. Therefore, the first exception to judicial immunity does not apply.

As for the second exception, it cannot be said that Defendant Judge Kennedy's and Defendant Judge Hedrick's judicial actions were "taken in the complete absence of all jurisdiction" because they were acting in accordance with their official duties as the presiding judges over the state court case. *Cooper*, 203 F.3d at 945 (quoting *Mireles*, 502 U.S. at 11-12). Thus, the second exception to judicial immunity does not apply.

Finally, with respect to Plaintiff's request for injunctive and declaratory relief, the *Ex Parte Young* exception cannot afford Plaintiff the relief he seeks for the reasons set forth above. This is true to the extent that Plaintiff purports to bring these claims against these Defendants in their individual capacities, just as it is true (as discussed above) to the extent that Plaintiff purports to bring these claims against these Defendants in their official capacities.

For these reasons, Defendant Judge Kennedy and Defendant Judge Hedrick are immune from Plaintiff's Section 1983 claims against them in their individual capacities, and the Court will dismiss those claims. Although the Court found a surprising dearth of authority as to whether such a dismissal is with or without prejudice, the Court is confident that a dismissal on immunity-based grounds like judicial immunity is properly deemed one without prejudice.

c. Defendant Corletra Mance

As far as the Court can discern, Plaintiff asserts Section 1983 claims against Defendant Mance in both her official and individual capacities. (Doc. No. 22-1 at 1). Plaintiff alleges Defendant Mance served as an appointed Guardian ad Litem for Plaintiff's mother in her conservatorship case despite having a known conflict of interest and having "engaged in conduct that corrupted the judicial process." (*Id.* at 2, 4). Plaintiff claims, "[a] concerned citizen contacted [him] and stated they had personal knowledge of Defendant Mance's pattern of bias in other cases." (*Id.* at 2). Plaintiff's claims against Defendant Mance fail for the following reasons.

A guardian ad litem is someone appointed by a court to represent another individual, typically a minor or an incapacitated adult. Even though such a person is appointed by a court, she is not a state actor, because she is tasked with pursuing the individual's best interests rather than the state's best interests. *Bracey v. Barbour*, No. 3:12-cv-629, 2012 WL 2395171, at *8 (M.D. Tenn. June 25, 2012) (citing *Long v. Pend Oreille Cnty. Sheriff's Dep't*, 385 F. App'x 641, 642 (9th Cir. 2010) (holding that a guardian ad litem was not a state actor for the purposes of Section 1983)) (collecting cases). Defendant Mance therefore is not a state actor under 42 U.S.C. § 1983. Plaintiff's Section 1983 claims against Defendant Mance in her official capacity fail for this reason, and the Court will dismiss those claims.

Furthermore, it is unclear what claims Plaintiff asserts against Defendant Mance in her individual capacity, and the Court will not create those claims for Plaintiff.[7] *See Frazier*, 41 F. App'x at 764; *Griffin*, 2000 WL 1800569, at *2. Therefore, the Court will dismiss Plaintiff's Section 1983 claims against Defendant Mance in her individual capacity.

[7] To the extent that Plaintiff claims Defendant Mance engaged in fraudulent conduct that "corrupted the judicial process," (Doc. No. 22-1 at 4), the Court declines to exercise supplemental jurisdiction over any state-law claims asserted by Plaintiff, as discussed in section vi herein.

*iii. Monell Liability Claim Against Defendant Metropolitan Government of Nashville and Davidson County*

Plaintiff alleges so-called *Monell* liability, stating Defendant Metro "failed to train or supervise its probate officials, resulting in systemic violations." (Doc. No. 22-1 at 4).

Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a plaintiff seeking monetary damages can sue municipalities and local government agencies for violations of their rights under 42 U.S.C. § 1983. For a municipality like Defendant Metro to be held liable under 42 U.S.C. § 1983, a plaintiff must make "a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by Defendant Metro or its agent." *Ward v. Reynolds*, No. 3:20-CV-00981, 2021 WL 3912803, at *3 (M.D. Tenn. Sep. 1, 2021) (citing *Monell*, 436 U.S. at 690-91). A plaintiff can show the illegality of a policy or custom by demonstrating one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A plaintiff must seek liability under a *Monell* theory because a municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691.

Here, Plaintiff asserts only one such circumstance: the existence of a policy of inadequate training or supervision. (Doc. No. 22-1 at 4).

To state a Section 1983 claim based on inadequate training or supervision, a plaintiff must plead facts sufficient to plausibly show that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Marcilis v. Twp. of*

*Redford*, 693 F.3d 589, 605 (6th Cir. 2012) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). "To show deliberate indifference, Plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [City or County] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

Alternatively, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Plinton*, 540 F.3d at 464 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). A complaint fails to state a viable claim when it "is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate . . . or [Defendant's] awareness of the deficiency in existing policy and the risk it posed." *Dishman v. Correct Care Sol., LLC*, No. 17-98-HRW, 2018 WL 3097319, at *5 (E.D. Ky. June 22, 2018).

The specific allegations in the Amended Complaint regarding Defendant Metro's liability are contained in a single sentence: "Metro Government failed train or supervise its probate officials, resulting in systemic violations." (Doc. No. 22-1 at 4). The Amended Complaint lacks any allegations that identify the allegedly deficient policy, how any existing policies or procedures may be inadequate, or whether Defendant Metro was aware of a deficiency in any existing policies or the risks they posed. (*See* Doc. No. 22-1).

Plaintiff did not plead sufficient facts to plausibly show "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury"

as contemplated by *Marcilis*. Furthermore, Plaintiff alleged neither prior instances of unconstitutional conduct by Defendant Metro, nor "that [Defendant Metro] has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation" as contemplated by *Plinton*.

The Amended Complaint is devoid of any allegations that identify a deficient policy, allegations that demonstrate the inadequacies of any existing policies or procedures, and allegations that Defendant Metro was aware of deficiencies of or any risks posed by any existing policies. Plaintiff, instead, makes only a conclusory assertion that Defendant Metro "failed to train or supervise its probate officials, resulting in systemic violations."

Plaintiff fails to successfully state a claim of *Monell* liability upon which relief can granted against Defendant Metro, the sole claim against that Defendant. Thus, the Court will dismiss Plaintiff's *Monell* claim.

*iv. Defendant Marquica Beasley*

As best the Court can discern, Defendant Beasley served as Plaintiff's mother's conservator. (*See* Doc. No. 22-1). Plaintiff sues Defendant Beasley in her official and individual capacities, alleging that Defendant Beasley "acted under color of state law through the conservatorship proceedings." (*Id.* at 1-2). Plaintiff further alleges Defendant Beasley cashed in the life insurance policy that Plaintiff's mother left for him, placed Plaintiff's mother in a nursing home against her wishes, ignored Plaintiff's repeated objections and requests, and engaged in conduct that corrupted the judicial process. (*Id.* at 3-4).

a. Official Capacity

A conservator is appointed by a court to provide protection and assistance to the person and/or property of a disabled person, and conservators must act in the best interests of the person

they are appointed to assist. Tenn. Code. Ann. § 34-1-101(4); *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (noting that a conservator "occupies a fiduciary position of trust of the highest and most sacred of character"). Conservators are, however, recognized by Tennessee courts as those that "act as the court's agent and are under the court's supervision." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995).

As appointing authorities, courts "retain continuing control over . . . conservators because the persons who accept these appointments become 'quasi-officials' . . . of the court appointing them." *Id.* at 92 (citing *Logan v. Graper*, 155 Tenn. 565, 4 S.W.2d 955, 956 (Tenn. 1927)). As a result, conservators may be deemed state actors, acting in a quasi-judicial role. *Bracey*, 2012 WL 2395171, at *9. Conservators, therefore, are entitled to absolute judicial immunity from suit, whether for injunctive relief or damages. *See Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (holding that persons who are integral parts of the judicial process are entitled to absolute immunity in a civil rights action). The plain language of § 1983—and in particular the end of its first sentence—prohibits injunctive relief "unless a declaratory decree [has been] violated or declaratory relief [is] unavailable." *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016).

Defendant Beasley, although not a judge, functioned as an agent of the state court by virtue of her role as conservator. Although this might initially seem to help Plaintiff by putting Defendant Beasley potentially within the scope of § 1983, ultimately it defeats Plaintiff's claims by making clear that Defendant Beasley is entitled to judicial immunity. Plaintiff does not contend that Defendant Beasley acted outside of her authority as conservator at any time. Additionally, Plaintiff does not allege the violation of a declaratory judgment, nor does he demonstrate that declaratory

relief is unavailable. The Court therefore concludes that Defendant Beasley must be afforded absolute quasi-judicial immunity from Plaintiff's claims requesting injunctive relief and damages.

Finally, and as best the Court can discern, Plaintiff requests retrospective, rather than prospective, declaratory relief against Defendant Beasley. Plaintiff alleges that Defendant Beasley cashed in his mother's life insurance policies, placed his mother in a nursing home against her wishes, ignored Plaintiff's repeated objections and requests, and engaged in conduct that corrupted the judicial process. (Doc. No. 22-1 at 3-4). Because judicial immunity bars claims for retrospective declaratory relief, *See Ward v. City of Norwalk*, 640 F. App'x at 468, Plaintiff is unable to obtain the relief he requests against Defendant Beasley.

As a result, the Court will dismiss Plaintiff's Section 1983 claims against Defendant Beasley in her official capacity. Such a dismissal is without prejudice, as discussed above.

b. Individual Capacity

Plaintiff also sues Defendant Beasley in her individual capacity but fails to assert any factual allegations against Defendant Beasley as it relates to her acting in that capacity. All allegations pertaining to Defendant Beasley in the Amended Complaint stem from Defendant Beasley's position as a conservator and actions taken within the conservatorship proceedings. Furthermore, Plaintiff does not indicate which of the "Causes of Action" within the Amended Complaint apply to Defendant Beasley in her individual capacity, leaving the Court without clarification as to what Plaintiff asserts in this regard. Because "[the] court cannot create a claim which [the plaintiff] has not spelled out in his pleading", *Brown*, 415 F. App'x at 613, the Court will dismiss any claims against Defendant Beasley in her individual capacity.

*v. Conspiracy Claim, 42 U.S.C. § 1985*

Plaintiff alleges a conspiracy claim under 42 U.S.C. § 1985, the final federal claim within the Amended Complaint. (Doc. No. 22-1 at 5). To state a claim of conspiracy under 42 U.S.C. § 1985, a plaintiff must allege facts that support the assertion that Defendants:

> (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and [sic] that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Conspiracy claims must be pled with specificity. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Here, Plaintiff does not allege that any Defendants conspired together. (*See* Doc. No. 22-1). Plaintiff simply lists "Count 4 – Conspiracy (42 U.S.C. § 1985)" within the "Causes of Action" section of the Amended Complaint. (*Id.* at 4-5). Without more, Plaintiff fails to state a conspiracy claim upon which relief may be granted. Therefore, the Court will dismiss this claim.

*vi. State Law Claims*

The Amended Complaint also alleges state law claims of fraud, conversion, civil theft, elder abuse, and failure to protect. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction [meaning, usually, federal-question jurisdiction or diversity jurisdiction], the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." *Id.* at § (c)(3). Not only *can* a court decline

to exercise jurisdiction over state law claims when it dismisses all claims based on original jurisdiction, but ordinarily a district court *should* decline in such circumstances. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Jurisdiction over Plaintiff's state-law claims could only be supplemental jurisdiction, rather than original jurisdiction in the form of diversity jurisdiction. District courts have diversity jurisdiction of all civil actions where the matter involves citizens of different states and where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction does not exist here.

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to hear any state law claims set forth in the Amended Complaint. As such, the Court will dismiss any state law claims asserted in the Amended Complaint without prejudice, to be filed, if Plaintiff chooses, in a Tennessee state court. The Court makes no representations as to the validity or timeliness of such claims.

## II. CONCLUSION

The Court has conducted the required screening of the Amended Complaint. Based on the reasons set forth herein, the Court finds as follows:

The Amended Complaint fails to state a claim upon which relief can be granted as to Defendants Johnson, Bradshaw, Shuemake, Trevecca, John Doe, and Jane Doe. Therefore, those individuals are **DISMISSED** as Defendants in this case.

Plaintiff's Section 1983 claims against Defendants Judge Kennedy and Judge Hedrick in both their official and individual capacities, as well as Plaintiff's Section 1983 claims against

Defendant Beasley in her official capacity, are **DISMISSED WITHOUT PREJUDICE** on the grounds that these Defendants are immune from suit as it pertains to the relief requested.

Plaintiff's Section 1983 claims against Defendant Mance in her official and individual capacity, as well as Plaintiff's Section 1983 claims against Defendant Beasley in her individual capacity, are **DISMISSED**.

Plaintiff's *Monell* claim against Defendant Metro fails to state a claim upon which relief may be granted, and that claim and Defendant are **DISMISSED**.

Plaintiff's conspiracy claim under 42 U.S.C. § 1985 is **DISMISSED**.

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of fraud, conversion, civil theft, elder abuse, and failure to protect. Therefore, those claims are **DISMISSED WITHOUT PREJUDICE**.

The Court having dismissed all claims and Defendants, this case is **DISMISSED**.

As a result, Plaintiff's Motion for Appointment of Counsel Pursuant to U.S.C. § 1915(e)(1) (Doc. No. 23) is **DENIED AS MOOT**.

This is the final Order denying all relief in this case. The Clerk **SHALL** enter judgment under Fed. R. Civ. P. 58(b) and close the file.

IT IS SO ORDERED.

Eli Richardson

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE